## SHEHANE *v.* GREER *et al.*

Where a land-improvement corporation, the owner of a tract of land divided up into a large number of lots, sold off certain of these lots, deeds being given in certain instances and in others mere receipts showing that the purchasers had bought under a "contract plan," of which there was no record notice, no bond for title being given, and afterwards the corporation executed a trust deed conveying all of the property, which provided for the execution of deeds by the trustee to purchasers of the lots, and which contained also a power of sale upon the happening of stated contingencies, and, the contingencies contemplated having occurred, the trustee sold the property under the power of sale, after duly advertising the same, and executed a deed to the purchaser at the sale, conveying all the lands embraced in the deed from the owner to the trustee, except certain designated lots, and the land corporation, the original owner, ceased carrying on the business, a petition in equity filed by a stockholder of the land corporation, in behalf of himself and other stockholders therein and in behalf of certain parties who purchased certain of the lots, against the purchaser at the trustee's sale, holding under a deed duly executed by the trustee in con-

formity with the power contained in the trust deed, to wind up the affairs of the land corporation, and praying the appointment of a receiver·to take charge of its assets and do other things necessary until the final winding up of the business of the corporation, was multifarious, because:

(a) The purchaser at the trustee's sale was not concerned with the winding up of the affairs of the corporation which had gone out of business.

(b) No such relation between the various purchasers of the lots, upon which they base their claim of equity therein, is shown that gives them the right to maintain a joint suit against the purchaser at the trustee's sale and have a decree against her establishing such equity.

2. No facts are set forth showing the right of the plaintiffs to the reformation of the deed executed by the trust company to the purchaser of the property described in the trust deed.

3. Nor was there such a community of right to be established as between the plaintiffs as to authorize them to maintain the petition under the provisions of the Civil Code, § 5419, making multiplicity a ground for the consolidation of causes.

No. 1998. February 17, 1921.

Equitable petition. Before Judge Bell. Fulton superior court. March 5, 1920.

The Southland Estates Corporation (hereinafter referred to as the Southland Company), a Georgia corporation, undertook to develop a certain tract of land located near Atlanta for residential purposes. The tract was named "Westland Estates," and was subdivided into approximately 1950 lots. To procure the money necessary for this development, first-mortgage bonds in the amount of approximately $28,000 were issued, and to secure them the Southland Company executed to the Hillyer Trust Company (now the Atlanta Trust Company), as trustee, a trust deed to this real estate. The property was described in terms of acreage in the deed. ·A copy of the trust deed is attached to one of the amendments filed in the case and made a part of the record. It was provided in this trust deed that the active management. of the property was to remain in the Southland Company, and that it should be "permitted to improve, sell, or. transfer" any part or all of the property by warranty deed countersigned by the trustee, and that upon deposit by the Southland Company with the trustee of a sum equal to $50 for each twenty-five foot unit lot sold, the trustee should issue a quitclaim deed to such lot to the purchaser. The trust deed further provided that "The Company shall have the entire and exclusive charge, control, and management of said property, and shall make such improvements from

time to time as shall be deemed necessary for the better and more rapid sale of this property; and shall collect and receive all moneys paid in and for any contracts for the sale of any lot on the contract plan of sale." It further provided that all such moneys so received over and above 20 per cent of the amount of sale of each lot up to the amount of $50 on each twenty-five foot unit lot of land so sold should be deposited with the trustee, to be applied to the payment of the bonds. Pursuant to the purposes for which it was organized, and under the powers expressly given it in the trust deed, as above set out, the corporation proceeded to sell off the lots into which the property had been subdivided; and to further promote the sale of the lots, a contract plan of sale was instituted, whereby lots were sold on installment basis with a small cash payment, and monthly notes for the balance. The contract provided that when the payments were completed the company should deliver to the purchaser a warranty deed to the lots bought by him.

In the early part of 1919, the corporation became in arrears in the payment of its obligations to the bondholders and to the trustee. The trust deed provided that in such event the trustee should have the right and power to take possession of the property, and " to sell any or all unsold portions of this property either by private sale or public outcry, in whole or in part, for the benefit of the bondholders, and to convey by deed to purchasers land so sold." Upon the default by the corporation above mentioned, the trustee advertised the entire property for sale, describing same in acreage as in the trust deed, and excepting only those lots for which warranty deeds had been issued by the corporation and quitclaim deeds given by the trustee. In April, 1919, it was sold to Mrs. James F. Shehane, the plaintiff in error. Thereupon the trustee executed a deed to Mrs. Shehane, conveying the entire property conveyed by the trust deed, excepting certain specified lots for which warranty deeds by the Southland Company and quitclaim deeds by the trustee had been given to purchasers. This deed, therefore, covered in terms all of the lots which had been sold by the company under the contract plan of sale, as above set out, upon which the payments had not been completed, and to which warranty and quitclaim deeds had not been issued. At the time of this sale there were 1541 lots which had not been sold in any

manner, and there were outstanding contracts with some 250 persons who had purchased approximately 500 lots under the contract plan of sale. All of them had paid at least a part of their purchase-money; others had paid in full. After the sale to Mrs. Shehane, the trustee refused to accept money tendered to it by the Southland Company on account of these lots, and to give quitclaim deeds to the purchasers upon the completion of their payments for same. It is alleged that at the time of said sale by the trustee Mrs. Shehane and the trustee had both actual and constructive notice of all of the details of the "contract plan of sale," and of the fact that a great number of these lots had been sold under the same to various purchasers.

At this stage suit was instituted by R. L. Greer, a stockholder of the Southland Company, against that company and the trustee, both residents of Fulton county, Georgia, and against Mrs. Shehane, a resident of Oglethorpe County, in behalf of himself and other stockholders and the purchasers of lots under the contract plan of sale, asking for a receiver for the corporation to wind up its affairs. The original petition and amendments set forth this state of facts, as well as allegations that the Southland Company had ceased to conduct any business, and that its only assets were the purchase-money notes on the lots sold as above stated, and that the corporation was making no effort to collect them. A temporary receiver was appointed by the court. The case coming on to be heard on July 4, 1919, the Southland Company was, on its answer and prayer, and without objection, made a party plaintiff by order of court, and the temporary receiver previously appointed was made permanent.

Interventions were filed by two of the holders of contracts of sale, asking that they be made parties plaintiff, and that they be granted relief to prevent the loss of the money which they had paid in on the lots purchased by them. One of these parties has paid all of the balance due on his purchase-price, the other has met all of his payments under his contract as they became due, and now stands ready, able, and willing to continue his payments according to his contract. All of the plaintiffs pray that the affairs of the Southland Company be wound up under the direction of the court; that the defendants, the trustee and Mrs. Shehane, be compelled to execute such papers as are necessary to give good, legal title

to the purchasers under the contracts of sale upon payment by them of the balance due; and that the deed from the trustee to Mrs. Shehane be so reformed as to include only those 1541 lots of this real estate which had never been sold by warranty deed or contract plan of sale or otherwise. The plaintiff in error filed demurrers, both general and special, to the original petition and all amendments and interventions in the case. Among other grounds of demurrer are those which, in substance, raise the contentions: (1) That the superior court of Fulton county had no jurisdiction over the defendant, Mrs. Shehane, on the ground that substantial relief is not prayed against any of the other defendants, and therefore that the suit should be brought in the county of Oglethorpe, where she resides. (2) That a stockholder, not having complied with the provisions of § 2224 of the Civil Code, could not bring a suit for and in behalf of others and of the purchasers, and ask for the appointment of a receiver for the corporation and other relief. (3) That there is a misjoinder of causes of action and of parties plaintiff and defendant, and that the petition is multifarious. (4) That there is no equity shown by the petition. The court overruled the demurrers upon all the grounds.

*McWhorter & McWhorter* and *Erwin, Erwin & Nix,* for plaintiff in error.

*Mallet & Bell, Troutman & Freeman, W. A. Fuller,* and *King & Spalding,* contra.

BECK, P. J. Certain of the grounds of the demurrer it is unnecessary to discuss or consider, except as incidentally involved in the contention made by one of the defendants, Mrs. Shehane (who is hereinafter referred to as the defendant), in her several demurrers, that the petition as it originally stood and the petition considered together with the several interventions was multifarious. It is unnecessary to determine whether she is in a position to urge her contentions set forth in one ground of her demurrer, that Greer had no right to bring the suit, not having complied with the provisions of § 2224 of the Civil Code relating to proceedings by minority stockholders for fraud, or acts ultra vires, against a corporation; because, so far as Mrs. Shehane is concerned, the case should have been dismissed as to her on the ground that the suit is multifarious, and that she could not be proceeded

against in a suit brought in Fulton county, Oglethorpe being the
county of her residence. The defendant bought the tract of land
formerly owned by the Southland Estates Corporation (hereinafter
called the Southland Company) at a sale by the trustee, the At-
lanta Trust Company (hereinafter referred to as the Trust Com-
pany), in pursuance of a power contained in a trust deed made by
the Southland Company. That deed contained the following pro-
vision, among others: " Beginning with the date of these presents
and for and during the term of trust, the Company (meaning the
Corporation), shall manage and operate the aforesaid real prop-
erty and be permitted to improve, sell, or transfer any part or all
of this property upon the terms and conditions following, that is
to say: The Company shall be permitted to sell from time to time,
by issuance of warranty deed or deeds, which warranty deed or
deeds shall be countersigned by the aforesaid Trustee for any lot
or lots in said property hereinbefore described, and known as
Westland Estates, on terms and conditions as follows: That upon
deposit by the Company with the Trustee of a sum equal to
fifty ($50.00) Dollars for each twenty-five (25) foot unit lot
in the property hereinbefore described, the Trustee shall issue to
the person or persons, firm or firms, corporation or corporations,
designated by the Company, a quitclaim deed or quitclaim deeds to
such lot or lots as may be so specified by the Company. When mak-
ing such deposit a plat of the property is to be filed with the Trustee
fully and clearly locating said lot or lots. Such payments made
by the Company to the Trustee as hereinbefore set forth shall be
used by the Trustee for the payment of interest or the retirement
and cancellation of bonds until all bonds are retired and interest
paid, and for no other purpose. The Company shall have entire
and exclusive control, charge, and management of said property,
and shall make such improvement from time to time as shall be
deemed necessary for the better and more rapid sale of this proper-
ty; shall keep all places, wherever of sufficient value to warrant, in-
sured, and shall pay all taxes and improvement charges which
may be assessed from time to time against the property, and shall
collect and receive all moneys paid in for any contract for the sale
of any lot on the contract plan of sale; but all such moneys so
received over and above 20% of the amount of sale of each lot
up to the amount of fifty ($50.00) dollars on each twenty-five

(25) foot unit lot of land so sold shall be deposited with the Trustee, to be by him applied to the payment of said bonds, interest and principal."

Neither in the part of the deed set forth immediately above nor in any other part of the deed do we find anything that would give to the purchaser at a trustee's sale constructive notice of the equities of those who had purchased on the contract plan from the Southland Company, where they had neither deed nor bond for title recorded. Counsel for defendants in error insist in their argument that Mrs. Shehane had both constructive notice and actual notice of the rights of the numerous persons actually parties to the suit or for whose benefit the suit is instituted; but nowhere in the pleadings is there any attempt to point out what the actual notice was that Mrs. Shehane had received. The claim that she had constructive notice is based upon the wording of the trust deed. There is nothing in the trust deed nor in the advertisement of the property to show that the trustee was not selling what had been conveyed to it by the Southland Company, except the designated lots. If Mrs. Shehane had had constructive notice of the claims of numerous purchasers on the contract plan, there would have been no merit in her demurrer on the ground of multifariousness. There would have been a unity in the nature of the plaintiff's and the intervenors' equities which would have welded the claims of equity on the part of the purchasers into a harmonious whole, and they could have been joined in one suit as parties plaintiff. But there being nothing to show constructive notice to Mrs. Shehane of these equities, then each one of the purchasers of the lots who had no deed or bond for title recorded must rely upon proof of actual notice. The suit does not indicate what actual notice was conveyed to her before she purchased; and in seeking to establish their equities, the proof to show actual notice will be as varied as the persons bringing the suits. If there had been one act, or possibly a class of acts, which could be insisted upon as giving actual notice,—as, if there had been an announcement at the sale that certain parties were vested with equities under these contracts for the sale, or some similar fact constituting notice, then possibly the parties could have made that unity in the character of the notice, it being common to all, the basis of a joint suit. But the claim of constructive notice not appearing to be valid, and no

common fact being urged as constituting actual notice which would support the claims of equity on the part of the purchasers on the contract plan, there is no right shown to unite these purchasers in one suit against Mrs. Shehane to have their claims established and deeds executed to them.

So far as concerns the contention that the plaintiffs should have the right to maintain this joint action for the establishment of alleged equities, on the theory that it is necessary to reform the deed from the Trust Company, that also must fail so far as it affects Mrs. Shehane's rights, for the reason that the Trust Company executed the kind of deed that it was authorized to execute under the terms of the trust deed, and there was nothing in the latter instrument to indicate to Mrs. Shehane that there were outstanding equities adverse to the title conveyed to her.

So far as the petition seeks to make Mrs. Shehane a party to the proceedings to wind up the affairs of the Southland Company and to join all the parties with claims of equity based on the payment of a part of the purchase-money, who had no deed or bond for title recorded, the petition in this case is multifarious, and the court erred in not sustaining that ground of the demurrer.

So far as it was a proceeding against Mrs. Shehane and the Trust Company in order to compel the execution of deeds, the petition must fall, because as to the relief sought in this part of the petition Mrs. Shehane is the only party against whom substantial relief is sought, there being no case shown to authorize the reformation of the deed as against Mrs. Shehane.

*Judgment reversed. All the Justices concur, except George, J., disqualified.*